UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER FLOYD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. C03-5418FDB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AMENDED MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES PURSUANT TO 28 U.S.C. § 2412. |

**INTRODUCTION**

Plaintiff moves for attorney's fees as the prevailing party and asserts that the United States position supporting the denial of disability benefits was not substantially justified. Plaintiff's counsel submits his time record in support of the motion.

Defendant does not oppose Plaintiff's motion for costs in the amount of $1,209.30 under 28 U.S.C. § 1920. Defendant does object to an award of EAJA fees as the Commissioner's position was substantially justified.

Plaintiff alleged that he was disabled commencing June 1, 1999 due to paranoid schizophrenia, a learning disability, and anxiety. Floyd's claim proceeded through the administrative process, and on July 29, 2003, he filed for judicial review in this court. The Magistrate Judge's recommendation affirming the Administrative Law Judge (ALJ) was adopted, and Plaintiff appealed on June 24, 2004. The Ninth Circuit, in a memorandum decision, reversed and remanded the case

ORDER - 1

for further administrative proceedings in order for the ALJ to re-evaluate whether Plaintiff could perform his past work in light of a proper understanding of "negative symptomology."

The Commissioner had argued that the ALJ's misunderstanding of the term was harmless error because it was an afterthought in the ALJ's otherwise proper analysis of the medical evidence. The Ninth Circuit did not decide any substantive EAJA issue, including whether the Commissioner's position was substantially justified.

The Commissioner argues that her position on the remand issue – the ALJ's evaluation of the medical evidence despite his improper understanding of the term "negative symptomology" – was substantially justified, that is, reasonable.

Plaintiff Floyd argues that the ALJ's determination that Dr. Lenza's references to negative symptoms or symptomatology undermined Floyd's claim that he suffered from schizophrenia, undermined Dr. Lenza's opinion of Floyd's functional limitations, and undermined the evidence from Kitsap Mental Health.

The test for determining whether the government was substantially justified is one of "reasonableness." *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005). Stated differently, the government's position is substantially justified if there is a "genuine dispute" over which "reasonable people could differ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

## DISCUSSION

The Ninth Circuit stated in its remand decision [set forth in Plaintiff's reply brief]:

> The ALJ rejected Dr. Lenza's opinion regarding Floyd's functional limitations in part because of Dr. Lenza's repeated references to Floyd's "negative symptomology." ... Here, the ALJ was specific but mistaken. The ALJ understood Dr. Lenza's reference to "negative symptomology" to refer to Floyd's denial of positive psychotic symptoms, such as hallucinations, or to malingering. However, Dr. Lenza's use of the term "negative symptomology" referred to Floyd's loss of personality traits, not his denial of symptoms. The *Diagnostic and Statistical Manual of Mental Disorders* § 295.30 (4th ed. 2000) recognizes negative symptoms, such as blunted affect or loss of personality traits, to be indicators of schizophrenia. Thus the "negative symptomology" noted by Dr. Lenza bolstered and did not undermine Floyd's claim that he suffered from schizophrenia.

ORDER - 2

*Floyd v. Barnhart*, No. 04-35730 (9th Cir. April 26, 2006). The Ninth Circuit concluded that "... on remand the ALJ may credit or reject Dr. Lenza's opinion for valid reasons, but must do so with a correct understanding of the meaning of "negative symptomology." *Id.*

The ALJ decision, referring to doctors' notations, including those of Dr. Lenza, indicates that Floyd was making progress, and his symptoms generally throughout the reports appear to be mild. A review of Dr. Lenza's reports after Floyd's appointments shows that the patient is compliant in taking his psychotropic medications, "presents as usual nicely dressed and groomed, calmly composed and socially appropriate." [TR 225] Dr. Lenza's notes for that July 14, 2000 appointment, however, indicate that because Floyd indicated a preference to be off the Loxitane and because he is on such a low dosage, it would be discontinued. [TR 226] Dr. Lenza indicated however, that what Floyd has "is probably a sub-chronic form of Schizophrenia; the predominance of negative symptomatology" and stated ..."due to the potential benefit of using Paxil to treat a component of social anxiety and depression, we will proceed with a trial." [TR 226]

After the ALJ reviewed Floyd's past relevant work experience as a "shipyard firewatch, fast food worker, security guard/usher, dishwasher, and bus person," [TR 36] and after having reviewed the evidence, stated:

> The evidence supports a finding that Mr. Floyd has possible schizophrenia by history, an impairment which causes significant vocationally relevant limitations.
>
> As more fully outlined below, there is a body of evidence which would appear to support a finding that this impairment has not been "severe" within the meaning of the regulations at all times during the period in question, with the claimant often exhibiting a psychological status attended by no more than minimal limitation. Nonetheless, after considering the entire record and the findings of the medical consultants with the State disability determination service, I will extend the claimant benefit of the doubt and find that his impairment meets the minimum standard for severity.

[TR 36]

The ALJ next proceeded to discuss Floyd's residual functional capacity. [TR 39] The ALJ could not conclude from the objective evidence in the record that Floyd's assertions of psychological

ORDER - 3

deficits or medication side-effects were so severe as to preclude the performance of all work activity. Considering his work history, the ALJ noted that "There certainly appears to be a volitional element to the claimant's terminations, or an external element such as the contract nature of the jobs. Further, the claimant admitted at the hearing that he continued to be interested in obtaining and maintaining employment if it was the "right job" and something that he enjoyed." [TR 39] Moreover, Floyd's description of his lifestyle did not support a claim of inability to work, although the ALJ acknowledged that these isolated reports are only indicators of Floyd's actual functional abilities. [39-40] The ALJ went on to state:

> Considering the benign mental status examinations and the claimant's own admissions regarding his functional abilities, there appears to be little credible evidence which suggests that his abilities to think, understand, remember, communicate, concentrate, get along with other people, and handle normal stress are seriously impaired. The claimant has not required repeated psychiatric hospitalizations or intensive psychotherapy during period at issue, and medication has been shown to effectively reduce negative psychological symptoms. As noted previously, the claimant did not display any signs of significant mental dysfunction during the course of the hearing.

[TR 40] The ALJ considered the State disability determination service's assessments and found them deserving of great weight as consistent with the medical documentation and hearing testimony. [TR 40] The ALJ also considered Dr. Lenza's opinions regarding Floyd's residual functional capacity where Dr. Lenza found "marked" difficulties in several categories (social functioning, concentration, persistence, pace, episodes of decompensation), but the ALJ found these conclusions not well-supported or consistent with other substantial evidence in the case record, including Dr. Lenza's own progress notes during the period in question, June 1999 to present. [TR 40] The ALJ then makes this statement:

> There is another troubling aspect to Dr. Lenza's functional assessment and/or diagnostic impression, that being his multiple references to "negative symptomatology" (Exhibit 4F:10F). This appears on multiple occasions, in the context of the claimant's complete denial of symptoms, and appears to imply that the claimant's report of lack of symptoms is in itself a manifestation of his schizophrenia, or a manipulation of his thought processes as part of a complex paranoid or delusional schema.

ORDER - 4

[TR 41]  Regardless of whether this paragraph indicates a misunderstanding by the ALJ of the term "negative symptomatology," the record simply does not demonstrate more than "moderate limitations" that "do not preclude the claimant's past work as a dishwasher, fast-food grill cook, or fire watch (all of which required no technical knowledge or skills, written reports, supervisory duties, or lead responsibilities as outlined in Exhibit 10E)." [TR 41] The ALJ's conclusion was entirely reasonable, and the matter of "negative symptomatology" is a minor issue.  According to the manual cited earlier,  positive symptoms of schizophrenia include delusions, hallucinations, and disorganized speech; negative symptoms include the loss of personality traits such as affect, unprompted speech, interest, and drive.  Considering these attributes as referenced in the record, there does not appear to be such a limitation from these negative aspects as to preclude Floyd from returning to his past relevant work.

Therefore, the Commissioner's position on the remand issue was substantially justified.  That is, the Commissioner's argument that the ALJ's evaluation of the medical evidence, despite his improper understanding of the term "negative symptomology," was substantially justified, that is, reasonable.

ACCORDINGLY, IT IS ORDERED: Plaintiff's Amended Motion for Attorney's Fees, Costs, and Expenses Pursuant to 28 U.S.C. § 2412 [Dkt. # 29] is DENIED, except that portion of the motion for costs in the amount of **$1,209.30** being unopposed is GRANTED.

DATED this 29th day of September, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 5